IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **KIMBERLY POUNDS,** | * |
| **Plaintiff,** | * |
| v. | *   Civil Case No. SAG-20-3379 |
| **STATE OF MARYLAND JUDICIARY,** | * |
| **Defendant.** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Kimberly Pounds ("Pounds") filed this employment discrimination lawsuit against her employer, the State of Maryland Judiciary[1] ("Defendant"), alleging claims of failure to promote and racial harassment pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"). ECF 1. Defendant filed a Motion to Dismiss ("the Motion"), ECF 7. Despite being represented by counsel, Pounds has not filed an opposition, and the time to do so has now expired. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons stated herein, the Motion to Dismiss will be granted.

## I. FACTUAL BACKGROUND

The facts below are derived from the Complaint and are taken as true for purposes of this Motion. ECF 1. Pounds began working as a deputy clerk in the Circuit Court for Harford County, Maryland in 1994. *Id.* ¶ 7. At the time of her hire, she was the only African American deputy clerk at that court. *Id.* In 2008, Diana Burk, who is Caucasian, became the court manager. *Id.* ¶

---

[1] Defendant asserts that the appropriate entity to be sued is the "State of Maryland," because the "Maryland Judiciary" is not a distinct legal entity. ECF 7-1 at 11 n.1. This Court need not address that question, since Plaintiff's claims will be dismissed. Should Plaintiff attempt to amend or refile her Title VII claims, she should ensure she names the proper defendant.

1

8. Burk began engaging in conduct Pounds perceived to be harassing, such as relocating Pounds's desk to a back corner of the office, directing Pounds's peers not to talk to her about work related issues, removing Pounds as a trainer on certain equipment and directing clerks not to ask her questions about their training, and scrutinizing Pounds's work assignments. *Id.*

In February, 2009, Pounds complained to Burk that she believed Burk was prejudiced against her because she is African American. *Id.* ¶ 9. Burk responded by saying that she had "friends that are Black." *Id.* During that same month, Pounds complained to the Clerk of Court, James Reilly, about her perception that Burk was targeting and harassing her. *Id.* ¶ 10. Reilly promised to schedule a meeting but ultimately took no action. *Id.* In the meantime, Burk regularly assigned Pounds extra work, referred to her as "you people," denied her access to materials she required for her job duties, reassigned her to work the counter phone, and directed supervisors to monitor her breaks. *Id.*

In September, 2014, another Caucasian employee, Constance Bebber, grabbed Pounds's arm to stop her from using the copier in the civil department. *Id.* ¶ 11. Pounds reported the incident to a deputy clerk, but no action was taken against Bebber. *Id.*

Three years later, in May, 2017, Pounds sought a promotion to a vacant supervisory position in the Civil Department. *Id.* ¶ 12. Instead, Bebber received the promotion, despite having no experience in that department. *Id.*

In July, 2017, Burk reassigned Pounds to work the front counter and phones. *Id.* ¶ 13. When Pounds inquired about the work assignment practices, Burk issued a written reprimand alleging that she had been "insubordinate and unprofessional. *Id.* ¶¶ 14, 15. However, after a serious incident with a Caucasian clerk who had reportedly been insubordinate, Burk did not issue

a reprimand and instead apologized to the clerk.[2]  *Id.* ¶ 15.  Pounds provided Reilly with a verbal and written response to her reprimand and reminded him that she had reported discrimination from Burk back in 2009.  *Id.* ¶ 16.  Pounds then filed a complaint of race and color discrimination with the Fair Practices Department at the court, relating to the reprimand.  *Id.* ¶ 17.

On July 21, 2017, Reilly convened a meeting with Pounds and Burk. *Id.* ¶ 18. After the meeting, however, he did not transfer Pounds out from Burk's ultimate supervision, and the conduct Pounds viewed as harassing continued.  *Id.*  In December, 2017, Burk accused Pounds, in front of other customers, of not charging an African American customer the appropriate filing fee. *Id.* ¶ 19.  Burk telephoned the African American customer to ask if he knew Pounds "personally." *Id.*

Pounds alleges that she contacted the EEOC on or about December 22, 2017, regarding her allegation of discriminatory harassment by Burk and the failure to hire her for the civil supervisory position by Reilly.[3]  *Id.* ¶ 20.

In February 2018, Pounds observed Bebber writing down Pounds's caseload assignment, but not the assignment of any other civil clerk.  *Id.* ¶ 22.  Neither Bebber nor Reilly would tell Pounds why Bebber was writing down her assignment.  *Id.*  In response, Pounds filed another complaint with the Fair Practice Department.  *Id.*

In September, 2018, Bebber transferred to the criminal department, which opened the position of supervisor in the civil department. *Id.* ¶ 23.  The open position was posted on December

---

[2] Plaintiff also alleges another "aggressive confrontation" in 2019 between Burk and the same Caucasian clerk, which again did not result in a reprimand.  ECF ¶ 26.

[3] No further information about this alleged contact has been provided to the Court, to allow a determination as to whether or not it could be deemed the equivalent of filing a charge.  It is unclear whether the EEOC took any action following the 2017 contact.

1, 2018, and Plaintiff applied, as the longest tenured clerk in the civil department. *Id.* ¶¶ 23, 24. Subsequently, however, the vacant supervisory position was re-classified as "Lead Worker-Paternity." *Id.* ¶ 24. Chris Merrill, who had never worked in the civil department, received the promotion.[4] *Id.* Plaintiff alleges that "the elimination of the lead worker position in civil and the reclassification of the civil supervisor position had the effect of preventing Plaintiff from promotion to those positions." *Id.* ¶ 25.

Plaintiff filed a formal charge with the EEOC on March 24, 2019, which the EEOC stamped as received on April 19, 2019. ECF 7-2; ECF 1 ¶ 6. The charge contains no specific allegations regarding conduct after July 18, 2017, including the issue relating to the 2018 promotional decision.

## II. LEGAL STANDARD

Defendant has filed a motion to dismiss the various counts of Plaintiff's Complaint, citing Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF 7-1. A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016).

Rule 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), aff'd, 85 F. App'x 960 (4th Cir. 2004). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008). Thus, the Court may properly grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base

---

[4] The Complaint does not allege Merrill's race.

jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." *See In re Birmingham*, 846 F.3d at 92. Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions'. . . .") (citation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a

complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). But a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the] pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), cert. denied, 566 U.S. 937 (2012).

**III. ANALYSIS**

### 1. Eleventh Amendment

42 U.S.C. § 1981 prohibits "discrimination in employment on the basis of race." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551-52 (4th Cir. 2006). However, the only federal mechanism for adjudicating a state's violation of the rights protected by § 1981 is "a cause of action for damages created by § 1983." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989). Under the Eleventh Amendment to the United States Constitution, a state cannot be sued in federal

court absent a valid waiver of its sovereign immunity. *See Board of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). In enacting § 1983, Congress did not abrogate state sovereign immunity for claims brought pursuant to that statute. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979) ("[Section] 1983 does not explicitly and by clear language indicate on its fact an intent to sweep away the immunity of the States[.]"); *see also Huang v. Bd. of Governors of Univ. of N. Carolina*, 902 F.2d 1134, 1138 (4th Cir. 1990) (plaintiff "properly concedes that the Eleventh Amendment bars . . . the § 1981 and § 1983 damage claims."). In addition, Maryland has not waived its immunity as to such claims. Thus, the claims Pounds brought pursuant to § 1981 must be dismissed with prejudice.

### 2. Failure to Promote

As to her Title VII claims for failure to promote, Pounds bears the burden to prove that she timely filed a charge of discrimination with the EEOC. *See United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *Davis v. NC Dep't of Corr.*, 48 F.3d 134, 140 (4th Cir. 1995). Because Maryland is a deferral state, Pounds was required to file a charge within 300 days of the adverse employment action she challenges. *See Adams v. Wallenstein*, 814 F. Supp. 2d 516, 522 (D. Md. 2011)). Courts "have generally dismissed any claims in which the plaintiff has not exhausted his administrative remedies before bringing suit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 513 (4th Cir. 2005). A claim is exhausted where it falls within "the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002).

Defendant has challenged the timeliness of Pounds's charge because the only EEOC charge that she filed, in 2019, did not complain of any misconduct occurring after 2017, including the

alleged 2018 failure to promote. ECF 7-2.[5] Pounds has not argued or established that she timely filed any other EEOC charge, because she has not opposed Defendant's motion. Based on the record before this Court, the charge filed in either March or April of 2019 was filed more than 300 days after the alleged July 2017 failure to promote and did not include any mention of the 2018 failure to promote.[6] Thus, on the record presented, Pounds has not exhausted her administrative remedies as to her failure to promote Title VII claims, which will be dismissed without prejudice.

### 3. Hostile Work Environment Claim

Pounds alleges that she was subjected to a hostile work environment because of her race, but fails to allege conduct that is severe or pervasive enough to constitute a hostile environment. A plaintiff is required to allege facts that, taken if true, establish that she "did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." *Evans v. International Paper Co.*, 936 F.3d 183, 192 (4th Cir. 2019). The allegations in Pounds's complaint, taken as true, are insufficient to meet the "high bar in order to satisfy the severe or pervasive test." *Sunbelt Rentals, Inc.*, 521 F.3d at 315; *see also Dangerfield v. Johns Hopkins Bayview Med. Ctr., Inc.*, Civil No. JKB-19-155, 2019 WL 6130947, at *3 (D. Md. Nov. 19, 2019) (stating, with respect to general allegations of consistent "condescending and abusive language and behavior," "[w]ithout details about the nature of the remarks and behavior at issue, it is impossible for the Court to determine whether the behavior she complains of would be seen as objectively hostile by

---

[5] The Court may consider the EEOC Complaint attached to Defendant's Motion to Dismiss because it is integral to the Complaint (the validity of several of Pounds's claims turn, in part, on whether she sufficiently exhausted her administrative remedies via the EEOC complaint process) and there appears no question of the document's authenticity. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

[6] To the extent that Plaintiff contends that her 2017 contact with the EEOC constituted the timely filing of a charge as to the 2017 failure to promote her, she has not included allegations that she received any response from the EEOC and filed this action within ninety days of that response.

a 'reasonable person'"); *Lenoir v. Roll Coater, Inc.*, 841 F. Supp. 1457, 1462 (N.D. Ind. 1992) (finding plaintiff's allegations of being reprimanded more severely than co-workers, without reference to exact dates, to be insufficient to support a harassment claim), *aff'd*, 13 F.3d 1130 (7th Cir. 1994). As an initial matter, many of the allegations in Pounds's complaint lack sufficient specificity as to when or how frequently they occurred. For example, the allegations against her supervisor, Burk, jump from 2009 to 2017 with no specific information about Burk's conduct in the intervening eight years, save one allegation which states, "Almost on a daily basis, Ms. Burk would communicate with Plaintiff in a demeaning and belittling way, referring to Plaintiff as 'you people' and directing subordinates to closely scrutinize and target Plaintiff." ECF 1 ¶ 35. The Complaint also provides a bullet point list of Burk's treatment of Pounds over that period, *id.* ¶ 10, but such generalized allegations lack the specificity to permit this Court to determine whether Burk's conduct was of the degree to be "severe and pervasive," even assuming it were race-based. *See Skipper v. Giant Food Inc.*, 68 F. App'x 393, 399 (4th Cir. 2003) ("[A] plaintiff pressing a hostile work environment claim must substantiate his claim with reasonable specifics about the alleged incidents that underlie the claim.").

While Pounds does provide several more particularized instances of other personnel actions taken by Burk that she suggests created a hostile environment in the 2017-2018 period—such as requiring her to move her desk around the office, changing her work responsibilities and assignments, and subjecting her to different discipline than her colleagues—none of these acts, alone or in combination, can be said to have altered the conditions of employment such that the atmosphere was objectively abusive. The Complaint details a workplace in which Pounds and Burk clearly did not like each other, and perhaps even an environment in which Burk treated Pounds unfairly at several junctures, but such allegations are insufficient in light of myriad Fourth

Circuit case law suggesting such workplace disagreements fall short of the rigorous "severe or pervasive" standard.  *See, e.g.*, *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003) (finding that a plaintiff failed to plead facts sufficient to support a hostile work environment claim where the facts alleged "merely tell a story of a workplace dispute regarding her reassignment and some perhaps callous behavior by her superiors"); *Ofoche v. Apogee Med. Grp., Virginia, P.C.*, 815 F. App'x 690, 693 (4th Cir. 2020) (holding that the district court properly dismissed a hostile work environment claim pursuant to Rule 12(b)(6) for failure to state a claim where the physician plaintiff complained of a heavy patient load and comments that his communication abilities were weak); *Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 312 (D. Md. 2015) (granting a Rule 12(b)(6) motion where the plaintiff alleged that her supervisor showed her disdain and disrespect, yelled at her, refused to provide resources, and ignored her calls and messages); *Favi v. Virginia State Univ.*, C/A No. 3:19-517, 2020 WL 4001085, at *5 (E.D. Va. July 15, 2020) (dismissing a hostile work environment claim for failure to state a claim where the plaintiff alleged that her supervisor asked her to perform duties outside her employee work profile, expected her to perform physically taxing work, and made decisions that made the plaintiff's research more difficult because those acts did not constitute severe or pervasive conduct amounting to a change in the terms and conditions of employment); *Chand v. Braithwaite*, No. CV 3:20-1578-MGL-PJG, 2020 WL 9209284, at *2 (D.S.C. Sept. 1, 2020) (dismissing hostile work environment claim that alleged supervisor mistreated plaintiff in a number of ways, including via negative performance evaluations, denial of workplace privileges, and perceived intimidating conduct).  In light of the insufficient allegations, Pounds's hostile work environment Title VII claim will be dismissed without prejudice.

    **IV.**    **CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss, ECF 7, will be GRANTED. The § 1981 claims are dismissed with prejudice and the Title VII claims are dismissed without prejudice. This case will be closed. A separate Order follows.

Dated: May 4, 2021                                      /s/
                                             Stephanie A. Gallagher
                                             United States District Judge